IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NINA SHAHIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 07-643-LPS |
| | : | |
| STATE OF DELAWARE and OFFICE OF | : | |
| MANAGEMENT AND BUDGET, | : | |
| | : | |
| Defendants. | : | |

Nina Shahin, Pro Se, Dover, Delaware.

   Plaintiff.

Aaron R. Goldstein and Laura L. Gerard, Deputy Attorneys General, Delaware Department of Justice, Wilmington, Delaware.

   Attorney for Defendants.

**MEMORANDUM OPINION**

April 8, 2013
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION

Plaintiff Nina Shahin ("Plaintiff") filed this action against Defendants, the State of Delaware and its Office of Management and Budget ("Defendants"), alleging employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"). (D.I. 2) Presently before the Court is Defendants' motion for summary judgment (D.I. 45) as well as Plaintiff's motion for jury trial (D.I. 50) and Plaintiff's motion for sanctions (D.I. 53). For the reasons that follow, the Court will grant Defendants' motion for summary judgment and will deny as moot Plaintiff's motions.

## II. PROCEDURAL BACKGROUND

Plaintiff's charge of discrimination, dated December 11, 2006, asserts that Defendants discriminated against her by reason of national origin (Ukrainian) and age, and retaliated against her for previously filed charges of discrimination, when they did not hire her for the position of senior accountant. (D.I. 2 at charge of discrimination) Plaintiff filed her complaint on October 16, 2007.

The Court entered a Scheduling Order on April 14, 2008, setting a discovery deadline of October 16, 2008 and a dispositive motion deadline of December 16, 2008.[1] (D.I. 14) Plaintiff served discovery requests (D.I. 19, 20) on Defendants on July 13, 2009, to which Defendants responded (D.I. 21, 22) on August 13, 2009. In March 2010, Plaintiff filed a request for an extension of time to complete discovery (D.I. 24) and, on May 4, 2010, she filed a motion for

---

[1]This case was originally assigned to Chief Judge Gregory M. Sleet. It was reassigned to the undersigned judge on August 24, 2011.

1

summary judgment (D.I. 26). After these motions were denied, Plaintiff appealed to the United States Court of Appeals for the Third Circuit. (*See* D.I. 35) The appeal was dismissed for lack of appellate jurisdiction. (D.I. 36)

Thereafter, the parties were ordered to submit status reports (D.I. 37) and a second scheduling order was entered on January 9, 2012 (D.I. 41), setting a new discovery deadline of July 9, 2012 and a new dispositive motion deadline of August 9, 2012. Defendants served Plaintiff with discovery requests, to which Plaintiff failed to respond. (D.I. 42, 43, 44) Defendants filed the pending motion for summary judgment on August 9, 2012.

### III. FACTUAL BACKGROUND

Plaintiff applied for the position of senior accountant (posting #10-06-38) in the State's Office of Management and Budget. (D.I. 2 at charge of discrimination; D.I. 22 at OMB643-12) Plaintiff, who is a white female, over fifty, of Ukranian descent, alleges that her credentials were evaluated unreasonably low and she was denied an interview. (D.I. 2 at charge of discrimination) The record does not include Plaintiff's work experience or educational background.

Erica Samson ("Samson"), a 29-year old white female of United States of America national origin was hired for the position of senior accountant. (D.I. 21 at interrog. No. 1) Samson has a Bachelors of Arts degree in marketing and management, two years experience as a senior accountant, and five years experience as an account specialist. (*Id.* at interrog. No. 2; D.I. 22 at OMB643-1-7) Her application, dated September 14, 2006, states that as of the time she applied for this position she was already a State employee. (D.I. 22 at OMB643-5. at Corp.642-26)

Thirty-four applicants were given a rating based upon their training and experience. (*Id.* at OMB643-8) Samson, along with two other applicants, received a "lateral" rating, which was the top rating. (*Id.* at OMB643-11) One applicant received a "vol demo" rating, while Plaintiff received a rating of 88.[2] (*Id.*) Other applicants scored as high as 97 and as low as 80. (*Id.*) Interviews were scheduled for fifteen individuals. (*Id.* at OMB643-16-20) Of those applicants interviewed, three were scored as "lateral," one was scored as "vol demo," and others had scores of 97, 92, and 88. (*Id.*) Applicants with scores of 95, 93, 90, and 88 were not interviewed. (*Id.*) The "all applicant list" indicates that seven applicants were male and twenty-seven applicants were female. (*Id.* at OMB643-21-23) There were twenty-six white applicants, six black applicants, one Hispanic applicant, and one unknown. (*Id.*) Plaintiff was listed as white. (*Id.* at OBM643-22) The application documents do not indicate the national origin of the applicants.

After she was not hired, on December 11, 2006 Plaintiff filed a charge of discrimination, alleging national origin and age discrimination as well as retaliation for filing previous charges of discrimination. (D.I. 2 at charge of discrimination) The responding party stated that Plaintiff met the minimum qualifications for the position and that her name would be placed on the register for one year from the date of application. (*Id.*)

IV. **LEGAL STANDARDS**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

---

[2]The court presumes "vol demo" means voluntary demotion.

586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podohnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

With respect to summary judgment in a discrimination case, the Court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).

Defendants move for summary judgment, or in the alternative for dismissal, on the basis that there are no genuine issues as to any material fact and they are entitled to judgment as a matter of law. Plaintiff opposes the motion on the grounds that she did not receive the January 9, 2012 scheduling order found at Docket Item 41. Plaintiff did not file a substantive response to the motion.

## V. DISCUSSION

### A. Scheduling Order

Plaintiff contends that the instant motion for summary judgment should not be considered because she did not receive a service copy of the January 9, 2012 scheduling order. She argues that this is "another gross violation" of her constitutional rights of due process and equal

5

protection because the order was communicated to only one party. Plaintiff argues that, unless the Court establishes a new scheduling order, granting Defendants' motion for summary judgment will violate her right to due process and equal protection.

The Court docket for the January 9, 2012 indicates that the scheduling order was sent to Plaintiff at her address of record. It was not returned as undeliverable. In addition, the Court docket reflects that Plaintiff propounded discovery upon Defendants and they responded to her requests. Conversely, when Defendants served discovery requests upon Plaintiff (D.I. 42, 43, 44), she did not respond. Plaintiff states that she never received the discovery requests and demanded proof of mailing. (*See* D.I. 51) Defendants provided Plaintiff with Federal Express tracking documents confirming delivery to Plaintiff's address.

The Court finds Plaintiff's position unavailing. The record does not support Plaintiff's position. The Court docket indicates that the scheduling order was sent to Plaintiff's address of record and it was not returned as undeliverable. Similarly, the record reflects that Defendants served Plaintiff with their discovery requests. Notably, there is nothing in the record to indicate that Plaintiff's ability to litigate this matter was hampered in any way. To the contrary, Plaintiff was provided with the discovery she sought, while Defendants were not.

### B.    Age Discrimination

Plaintiff alleges that Defendants discriminated against her on the basis of age, in violation of the ADEA. She seeks damages and injunctive relief. The ADEA includes in its definition of employer "a State or political subdivision of a State and any agency . . . of a state." 29 U.S.C. § 630(b)(2). The Supreme Court has held that, in the ADEA, Congress did not abrogate the states' sovereign immunity to suits for money damages by private individuals under the Eleventh

Amendment. *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000). While the Eleventh Amendment permits suits for prospective injunctive relief against state officials, *see Ex Parte Young*, 209 U.S. 123 (1908), this doctrine "has no application in suits against the States and their agencies, which are barred regardless of the relief sought," *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted).

Plaintiff filed her suit against the State of Delaware and its Office of Management and Budget. She did not name any state officials. Defendants are immune from suit. Therefore, the Court will grant the motion for summary judgment on the ADEA claim.

### C. National Origin Discrimination

Plaintiff alleges she was not hired due to her national origin. Defendants seek summary judgment on the grounds that Plaintiff failed to establish a prima facie case of discrimination and, alternatively, they have articulated a legitimate, nondiscriminatory reason for selecting the candidate they did.

Plaintiff has provided no direct evidence of discrimination by reason of her national origin.[3] Thus, the Court turns to the *McDonnell Douglas* burden-shifting framework. Under this framework, Plaintiff must first establish a prima facie case of discrimination by proving that: (1) she is a member of a protected class; (2) she sought and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out

---

[3]Under Title VII, "[t]he term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973).

individuals with qualifications similar to the plaintiff's to fill the position.[4] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Sarullo v. United States Postal Serv.*, 352 F.3d 789 (3d Cir. 2003); *accord Iyer v. Everson*, 238 F. App'x 834 (3d Cir. Aug. 3, 2007).

If a plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant employer to proffer a "legitimate non-discriminatory" reason for its actions. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997). If the defendant meets this burden, the burden again shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *See McDonnell Douglas*, 411 U.S. at 804.

Here, Plaintiff alleges discrimination occurred after she applied for the senior accountant position, when her credentials were evaluated unreasonably low and she was not interviewed. Plaintiff previously provided several exhibits (*see* D.I. 27) to the Court, none of which support her claim of national origin discrimination. Moreover, the record does not include any evidence that Defendants were aware of Plaintiff's national origin. Nor does it include evidence of her education and experience.

Plaintiff has failed to establish a prima facie of discrimination. It is undisputed that Plaintiff is of Ukrainian origin and that she was not interviewed for the senior accountant position. However, there is no evidence Defendants were even aware of her national origin. The evidence of record indicates only that she was classified as white, which is not a national origin. Plaintiff makes the leap from an unsuccessful employment application to employment discrimination based upon her national origin when there is no evidence of record to support an

---

[4] Defendants presume that Plaintiff's membership in a protected class and her failure to be hired based solely on the face of the complaint, but they dispute whether her qualifications are established on the present record. (*See* D.I. 46 at n.1)

inference of discrimination. *See Iyer v. Everson,* 238 F. App'x 834 (3d Cir. Aug. 3, 2007) (unsuccessful applicant for position did not establish prima facie case of discrimination because he did not present evidence of circumstances that raised inference of discriminatory action; he did not establish causal nexus between his membership in protected class and employer's decision not to hire him).

Alternatively, even if Plaintiff could make out a prima facie case of national origin discrimination, she has not produced evidence from which a reasonable juror could find that Defendants' reason for their employment decision was a pretext for discrimination. When a plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant-employer to proffer a "legitimate non-discriminatory" reason for its actions. *See Woodson,* 109 F.3d at 920 n.2. If a defendant meets this burden, the burden again shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *See McDonnell Douglas,* 411 U.S. at 804. To do this, plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Harding v. Careerbuilder, LLC,* 168 F. App'x 535, 537 (3d Cir. Feb. 27, 2006) (internal citations and quotation marks omitted).

Defendants have met their burden by articulating a legitimate, nondiscriminatory reason for not hiring Plaintiff. The successful candidate was hired based upon her credentials, which included over seven years' experience working for the State of Delaware. Nothing before the Court contradicts Defendants' proffered reason for their failure to hire Plaintiff. Nor is Defendants' proffered reason for their action weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find it unworthy of credence. *See Sarullo*, 352 F.3d at 800. Even construing the evidence in the light most favorable to Plaintiff, she has provided no evidence from which a fact-finder could either disbelieve Defendants' articulated reason, or believe that a discriminatory reason was more likely than not the cause of the employment action. As there is no genuine dispute on the dispositive legal issue of whether Defendants had a discriminatory motive, the Court will grant Defendants' motion for summary judgment on the issue of national origin employment discrimination.

### D. Retaliation

Plaintiff appears to allege that she was not hired by Defendants in retaliation for previously filed charges of discrimination. To the extent she raises such a claim, it, too, fails.

To establish a prima facie case of retaliation, a plaintiff must show: (1) she engaged in protected activity; (2) the employer took a materially adverse action against her; and (3) there was a causal connection between the protected activity and the employer's action. *See LeBoon v. Lancaster Jewish Comty, Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007). Here, no reasonable juror could find for Plaintiff on the retaliation issue. There is no evidence of record that an adverse employment action was taken after, or contemporaneous with, a protected activity. Nor is there evidence that Defendants had knowledge that Plaintiff had filed a previous charge of

discrimination or that hiring decisions were in any way influenced by her prior charge. Because there is no evidence of a nexus between the filing of a charge of discrimination and Defendants' hiring decision, the retaliation claim fails.

## VI. **CONCLUSION**

For the above reasons, the Court will grant Defendants' Motion for Summary Judgment (D.I. 45) and will deny as moot Plaintiff's Motion for Jury Trial (D.I. 50) and Motion for Sanctions (D.I. 53).

An appropriate Order follows.